1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

11

12

13

RACHEL B.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

CASE NO. 2:19-CV-1574 – DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

14

15

16

17

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

18

19

20

21

22

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he improperly discounted Plaintiff's testimony and the medical opinion evidence. The ALJ's error is therefore harmful, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of the Social Security Administration ("Commissioner") for further proceedings consistent with this Order.

23

24

1

### FACTUAL AND PROCEDURAL HISTORY

2       On September 8, 2015, Plaintiff filed an application for SSI, alleging disability as of

3 November 1, 2009. *See* Dkt. 9, Administrative Record ("AR") 15. The application was denied

4 upon initial administrative review and on reconsideration. *See* AR 15. A hearing was held before

5 ALJ Eric S. Basse on October 13, 2017. *See* AR 15. In a decision dated August 8, 2018, the ALJ

6 determined Plaintiff to be not disabled. *See* AR 32. Plaintiff's request for review of the ALJ's

7 decision was denied by the Appeals Council, making the ALJ's decision the final decision of the

8 Commissioner. *See* AR 14; 20 C.F.R. § 404.981, § 416.1481.

9       In the Opening Brief, Plaintiff maintains the ALJ erred by improperly: (1) discounting

10 Plaintiff's subjective symptom testimony (2) evaluating the medical opinion evidence; and (3)

11 finding Plaintiff's PTSD was not medically-determined. Dkt. 13. Plaintiff requests the Court

12 remand her claims for an award of benefits. Dkt. 13, p. 18.

13

### STANDARD OF REVIEW

14       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

15 social security benefits if the ALJ's findings are based on legal error or not supported by

16 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

17 Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

18

### DISCUSSION

19 **I.      Whether the ALJ provided specific, clear, and convincing reasons for finding**
            **Plaintiff's testimony not fully supported.**
20
         Plaintiff asserts the ALJ erred by failing to provide specific, clear, and convincing reasons
21
for discounting Plaintiff's testimony. Dkt. 13, pp. 5-13.
22
         To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent
23
reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The
24

1   ALJ "must identify what testimony is not credible and what evidence undermines the claimant's

2   complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence

3   shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must

4   be "clear and convincing." *Lester*, 81 F.2d at 834. Questions of credibility are solely within the

5   control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The ALJ may consider

6   "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness

7   and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily

8   activities, and "unexplained or inadequately explained failure[s] to seek treatment or to follow a

9   prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The Court

10  should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th

11  Cir. 1984). In addition, the Court may not reverse a credibility determination where that

12  determination is based on contradictory or ambiguous evidence. *Id.* at 579.[1]

13      At the October 2017 hearing, Plaintiff testified she is generally unable to go shopping and

14  buy her own groceries. AR 45-46. She testified that she has a hard time concentrating. AR 47.

15  Plaintiff testified she had two surgeries to repair a fistula, but still suffers from incontinence. AR

16  50. She testified her mental health issues make her stay away from people as much as possible. AR

17  52. She testified she gets panic attacks, and sometimes they happen for no reason, causing her to

18  burst into tears and hyperventilate. AR 53. Plaintiff testified she has a "concentration problem" that

19  causes her to become extremely angry. AR 54. In September 2015, Plaintiff claimed she is

20  _____

21      [1] On March 28, 2016, the Social Security Administration changed the way it analyzes a claimant's
    subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2016 WL 1237954 (Mar. 24,

22  2016). The term "credibility" is no longer used. 2016 WL 1119029, at *1. Further, symptom evaluation is no longer
    an examination of a claimant's character. *See id.* at *10 ("adjudicators will not assess an individual's overall
    character or truthfulness"). However, the applicable Ninth Circuit case law still refers to the term "credibility." *See*

23  *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth
    Circuit precedent). Thus, at this time, the Court will use "credibility" and "subjective symptom testimony"

24  interchangeably.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 3

1  triggered by confrontations and has panic attacks or feels like acting out violently. AR 243. She

2  said physical activity causes rectal leakage and bleeding, and that stressful situations makes it

3  difficult for her to focus on tasks. AR 243. Plaintiff said she stays in bed most of the time with

4  "low motivation, feeling stuck in life" due to her depression. AR 1016. Plaintiff testified that due to

5  her mental health issues, she doesn't leave her home for two to two and a half weeks per month.

6  AR 56-57. She further claimed problems with standing, walking, sitting, talking, climbing stairs,

7  completing tasks, understanding, following instructions, getting along with others, handling stress

8  and changes in routine, and with memory and paying attention. AR 248-249.

9       The ALJ summarized Plaintiff's testimony and found Plaintiff's "medically determinable

10  impairments could reasonably be expected to produce some of the above alleged symptoms[.]" AR

11  22. However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and

12  limiting effects of these symptoms are not entirely consistent with the medical evidence and other

13  evidence in the record[.]" AR 657. The ALJ provided several reasons to discount Plaintiff's

14  subjective symptom testimony: (1) Plaintiff's allegations of fecal incontinence are inconsistent

15  with the record; (2) Plaintiff's allegations of extremely limiting mental issues are inconsistent with

16  the minimal observations of psychiatric symptoms and difficulties in the record, and (3) with

17  Plaintiff's performance on mental status examinations ("MSEs"); (4) Plaintiff's activities of daily

18  living are inconsistent with her allegations of limiting symptoms; and (5) the record contains

19  inconsistent complaints and treatment during the relevant period. AR 23-27.

20       Determining a claimant's complaints are "inconsistent with clinical observations" can

21  satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*,

22  166 F.3d 1294, 1297 (9th Cir. 1998); *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir.

23  2011). In support of the first reason for rejecting Plaintiff's subjective symptom testimony, the ALJ

24

1  cites to several records showing the medical record does not contain evidence of fecal incontinence

2  to the level that Plaintiff alleges. *See* AR 23. For example, the ALJ cites to Plaintiff's consultation

3  with Dr. Michelle Sinnett, Plaintiff's treating surgeon that performed her fistula surgeries. AR 501.

4  Dr. Sinnett opined Plaintiff "had no evidence of inflammatory bowel disease" and "no evidence of

5  recurrent fistula" in a consultation after her procedures. AR 502. Dr. Sinnett noted that "[Plaintiff]

6  does have external hemorrhoids but they do not appear severe enough to account for her fairly

7  extreme symptoms." AR 502. The ALJ also cites to another gastrointestinal specialist who treated

8  Plaintiff, Dr. Jason Schneier, who recommended Plaintiff stop consuming all types of dairy. AR

9  23; 336. After four months, Plaintiff reported some improvement with her symptoms, and notably

10  did not claim to have any ongoing problems with fecal incontinence. AR 333.

11        Dr. Sinnett consulted with Plaintiff again in October 2015 and noted Plaintiff's symptoms

12  of leakage and bleeding were attributable to Plaintiff's hemorrhoids. AR 503. Dr. Sinnett wrote

13  that she "did not see any evidence of sphincter disfunction either on digital rectal exam or by

14  history." AR 504. Dr. Sinnett also noted Plaintiff was not incontinent of gas and despite some

15  evidence of some perianal skin tags, "[Plaintiff] has no evidence of perianal fistula or fissure." AR

16  504.

17        Plaintiff argues there are instances in the record which show Plaintiff suffers from

18  continuing fecal incontinence. Dkt. 13, pp. 9-11. For example, Plaintiff cites a consultation with

19  Dr. Justin Cuschieri where she was prescribed a medicine to "slow fecal incontinence." AR 333.

20  The court is not responsible for reweighing the evidence. *Thomas v. Barnhart*, 278 F.3d 947, 954

21  (9th Cir. 2002) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999)).

22  If the evidence "is susceptible to more than one rational interpretation," including one supporting

23  the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Id*. Here, the

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 5

1  evidence is susceptible to more than one rational interpretation. Drs. Sinnett and Schneier did not

2  note any evidence which support Plaintiff's claim that she has severe symptoms resulting from

3  fecal incontinence. *See* AR 333-336, 501-502. By contrast, Dr. Cuschieri prescribed medicine to

4  slow Plaintiff's fecal incontinence, indicating that it was a continuing problem. AR 333. Thus,

5  because the evidence is susceptible to more than one rational interpretation, the Court must accept

6  the ALJ's conclusion that Plaintiff's subjective testimony is not supported by the objective

7  evidence. *See Thomas*, 278 F.3d at 954. The ALJ, however, cannot discount Plaintiff's testimony

8  solely because it is not supported by objective medical evidence. *See Orteza v. Shalala*, 50 F.3d

9  748, 749-750 (9th Cir. 1995); *Byrnes v. Shalala*, 60 F.3d 639, 641-642 (9th Cir. 1995). As

10  discussed below, the ALJ's remaining reasons for discounting Plaintiff's testimony are not valid.

11  Therefore, the ALJ's first reason for discounting Plaintiff's testimony is not sufficient to uphold

12  the ALJ's decision.

13        The ALJ's second, third, fourth, and fifth reasons all address Plaintiff's mental health. The

14  Court finds these reasons are not specific, clear, and convincing reasons for discounting Plaintiff's

15  testimony.

16        The ALJ's second reason for discounting Plaintiff's testimony, that the record contains

17  minimal observations of psychiatric symptoms and difficulties, is not specific, clear, and

18  convincing. The ALJ cites to numerous places in the record which indicate Plaintiff does not have

19  psychiatric symptoms. AR 24; *see* AR 502, 504, 514, 519, 527, 530, 537, 546, 551, 557, 562, 616,

20  621, 627, 632, 636, 641, 645, 793, 814, 840, 846, 1050. The Court agrees with Plaintiff's argument

21  that nearly all the ALJ's citations contain a cursory glance at Plaintiff's mental health, and at most

22  note she was oriented or acted appropriately with her providers. *See* AR 24; Dkt. 13, p. 11. Indeed,

23  several of Plaintiff's mental health providers opined Plaintiff has marked and severe limitations as

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 6

a result of her mental impairments. For example, Dr. Jenna Yun opined Plaintiff is severely impaired in her ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 870. ARNP Jessie Enell opined Plaintiff "appears to meet criteria for depression and post traumatic stress disorder." AR 454. Dr. Steven Johansen, a clinical psychologist, diagnosed Plaintiff with dysthymic disorder and anxiety, and opined to several marked limitations. AR 338-340.

"[T]he regulations give more weight to … the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also Smolen*, 80 F.3d at 1285 (holding that the ALJ should have given greater weight to a physician with the expertise that was most relevant to the patient's allegedly disabling condition). As discussed above, the opinions of several of Plaintiff's mental health care providers are consistent with Plaintiff's statements concerning the intensity, persistence, and limiting effects of her mental health issues. Further, all of the citations the ALJ provided are from consultations with health providers who are not specialized in treating mental health and only briefly focused on Plaintiff's mental functioning. Accordingly, the Court finds this reason the ALJ provided to discount Plaintiff's testimony is not specific, clear, and convincing.

The ALJ's third reason to discount Plaintiff's testimony is not specific, clear, and convincing. The ALJ reasoned that Plaintiff's performance on various MSEs is inconsistent with her allegations of limiting mental health symptoms. AR 25. The MSEs the ALJ cites to demonstrate Plaintiff had both healthy mental functioning and unhealthy mental functioning. *See* AR 25. For example, the ALJ first cites to a consultation with ARNP Andrew Kokesh. AR 25. Mr. Kokesh indicated Plaintiff had logical thought process, normal thought content, normal cognition,

average intelligence, and normal insight and judgment. AR 859. However, in the same MSE, Mr. Kokesh opined Plaintiff's mood was depressed and anxious, and diagnosed her with major depressive disorder, generalized anxiety disorder, and borderline personality disorder. AR 859-900. The ALJ also cites to an MSE performed by Dr. Margaret Cunningham, who found Plaintiff's thought process and content, memory, fund of knowledge, concentration, abstract thought, and insight and judgment were all not within normal limits. AR 359. The ALJ additionally cites to an MSE performed by Dr. Yun, who found Plaintiff demonstrated normal thought process and content, normal orientation, normal perception, and normal abstract thought. AR 871-872. But Dr. Yun opined Plaintiff's affect was anxious and dysphoric in the same MSE, and also found Plaintiff's memory, concentration, and insight and judgment were not within normal limits. AR 870-871.

An ALJ must not "cherry-pick" certain observations without considering their context. *Reddick v. Chater*, 157 F.3d 715, 722-723 (9th Cir. 1998); *see also Hutchinson v. Colvin*, 2016 WL 6871887, *4 (W.D. Wash., Nov. 22, 2016) (noting the ALJ's treatment of the evidence suggested improper "cherry-picking" to support the ALJ's decision "while failing to address aspects of the record supporting a finding of severe limitations"). Here, the ALJ focused on places in the record that support his ultimate disability determination, and ignored evidence supporting a finding of disability. Thus, this reason the ALJ provided for discounting Plaintiff's opinion is not specific, clear, and convincing.

The ALJ's fourth reason for discounting Plaintiff's testimony, that Plaintiff's allegations are inconsistent with her activities, is not specific, clear, and convincing. The ALJ notes Plaintiff successfully attended her cousin's wedding without any reported difficulties. Courts have repeatedly stated that "a person's ability to engage in personal activities ... does not constitute

1    substantial evidence that he or she has the functional capacity to engage in substantial gainful

2    activity." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998); *See O'Connor v. Sullivan*, 938

3    F.2d 70, 73 (7th Cir.1991) ("The conditions of work are not identical to those of home life").

4    Plaintiff's ability to attend one wedding does not necessarily show she could "perform an eight-

5    hour workday, five days per week, or an equivalent work schedule." *See* Social Security Ruling

6    ("SSR") 96-8p, 1996 WL 374184, at *1. Moreover, the ALJ failed to explain how Plaintiff's

7    ability to attend her cousin's wedding shows she could sustain a full-time work schedule. *See*

8    *Mulanax v. Comm'r of Soc. Sec. Admin.*, 293 Fed. Appx. 522-523 (9th Cir. 2008) (citing SSR 96-

9    8p) ("Generally, in order to be eligible for disability benefits under the Social Security Act, the

10   person must be unable to sustain full-time work – eight hours per day, five days per week"). In

11   addition, disability claimants "should not be penalized for attempting to lead normal lives in the

12   face of their limitations." *Reddick*, 157 F.3d at 722. Thus, the fact that Plaintiff attended her

13   cousin's wedding is not a legitimate reason for discounting Plaintiff's testimony.

14          The ALJ also noted there are inconsistent statements regarding Plaintiff's work history,

15   specifically noting Plaintiff described additional work history to some evaluators that she did not

16   include in her SSI application materials. AR 26. The ALJ points to a consultation Plaintiff had with

17   Ms. Enell, where Plaintiff said she once "worked for her mother in the past as a receptionist." AR

18   453. But Ms. Enell also wrote that Plaintiff said her mother is the most "evil person ever" and "for

19   this reason she no longer has contact with her." AR 453. Plaintiff argues that, because the SSI

20   forms requested information about Plaintiff's jobs only from the 15 years before she became

21   unable to work, it is probable that the work for her mother predated the requested time period. Dkt.

22   13, p. 5; *see* AR 235, 264. Plaintiff also notes that "[t]he certified earnings record confirms that in

23   the 15 years prior to the alleged onset date in 2009 (*i.e.* 1994-2009) there was no substantial

24

1  earnings apart from those which were reported to SSA by [Plaintiff] in the purportedly inconsistent

2  forms." Dkt. 15, p. 1.

3       An ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at \*22. Here, the ALJ

4  inappropriately speculated that Plaintiff's job working for her mother as a receptionist was within

5  the past 15 years before Plaintiff became unable to work despite lack of evidence, and thus should

6  have been reported on Plaintiff's SSI application. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th

7  Cir. 2006) (*quoting Morgan*, 169 F.3d at 599) (an ALJ's finding that a claimant is not credible

8  must be based on specific "evidence [that] undermines the claimant's complaints," not on findings

9  that presume first that a claimant is not credible). Thus, it was inappropriate for the ALJ to discount

10  Plaintiff's testimony for this reason.

11       The ALJ also noted Plaintiff suggested she stopped working because of her gastrointestinal

12  disorder. AR 22. But the ALJ did not cite to where this information is in the record. *See* AR 22. At

13  the hearing, Plaintiff explained her gastrointestinal disorder developed while she was working,

14  which made it more difficult to work. Dkt. 13, pp. 5-6. Plaintiff also notes she testified at the

15  hearing that she never said her gastrointestinal problems were the reason she stopped working, but

16  that "every job" ended because "she would become agitated and she would quit before it escalated

17  to physical violence." Dkt. 13, p. 6, AR 62-65. Therefore, there is no inconsistency in Plaintiff's

18  reports about why she stopped working because Plaintiff consistently reported she stopped

19  working as a result of her mental health issues. Thus, it was inappropriate for the ALJ to discount

20  Plaintiff's testimony for this reason. Accordingly, the ALJ's fourth reason for discounting

21  Plaintiff's testimony, that Plaintiff's allegations are inconsistent with her activities, is not specific,

22  clear, and convincing.

23

24

1    The ALJ's fifth reason for discounting Plaintiff's testimony, that Plaintiff inconsistently

2    complained about and was inconsistently treated for her mental health issues, is not specific, clear,

3    and convincing.[2] AR 27. The ALJ's reasoning is not supported by the record. Although there was a

4    gap in treatment with Plaintiff's primary provider in early 2016, Plaintiff still attended mental

5    health appointments during this time. *See* AR 752-774. The ALJ further notes that Plaintiff's

6    mental health symptoms were helped with medication. AR 27. "An ALJ may properly rely on the

7    fact that medication is helpful to discount a claimant's credibility." *Wilson v. Colvin*, 2013 WL

8    4040122, at *7 (C.D. Cal. Aug. 8, 2013). But an ALJ must not "cherry-pick" certain observations

9    without considering their context. *Reddick*, 157 F.3d at 722-723. Here, the ALJ cited to one

10   instance in the record where Plaintiff "felt she needed a break from her medications." AR 619. She

11   stopped taking her medication for a few months due to feeling very depressed—the very symptom

12   the medication is designed to treat. AR 619. "[A] mentally ill person's noncompliance with

13   psychiatric medications can be, and usually is, the result of the mental impairment itself and,

14   therefore, neither willful nor without a justifiable excuse." *Pate-Fires v. Astrue*, 564 F.3d 935, 945

15   (8th Cir. 2009) (internal citations and quotations omitted); *see also Kangail v. Barnhart*, 454 F.3d

16   627, 630 (7th Cir. 2006) ("mental illness in general … may prevent the sufferer from taking her

17   prescribed medicines or otherwise submitting to treatment") (internal citations omitted). The

18   context of this situation sheds light on the seriousness of Plaintiff's mental illness. Even on

19   medication that Plaintiff said was helpful, Plaintiff's mental health issues caused her to stop taking

20   her medication, a period in which Plaintiff reported to have "[l]aid in bed and didn't do anything."

21

22   _____

23   [2] The ALJ also discounted Plaintiff's testimony regarding her physical symptoms in his fifth reason, but as
discussed above, the ALJ cannot discount Plaintiff's testimony solely because it is not supported by objective
medical evidence. *See Orteza*, 50 F.3d 749-750; *Byrnes*, 60 F.3d 641-642. The Court finds the ALJ otherwise erred
24   on his fifth reason. Thus, the Court need not assess this aspect of the ALJ's reasoning.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 11

AR 619. Further, the ALJ has "cherry-picked" this one report by Plaintiff amongst multiple other reports which indicate Plaintiff's mental health is as severe as she alleges. For example, as the ALJ cites, Plaintiff reported she felt better after taking medication in May 2016. AR 619. But two months later, in July 2016, Plaintiff reported "functioning as extremely difficult." AR 614. At the same consultation, Dr. Kathleen Dunbar reported "[Plaintiff] presents with a depressed mood" and had "difficulty concentrating" and opined Plaintiff's "symptoms have been bad." AR 614. Ms. Enell's opinion that Plaintiff "appears to meet criteria for depression and post traumatic stress disorder" was made while Plaintiff was taking medication. AR 454. Dr. Cunningham noted Plaintiff was taking several medications which treat mental health symptoms yet still opined to several marked and severe limitations. AR 354-357. Accordingly, the ALJ's decision to discount Plaintiff's testimony on the basis that Plaintiff once reported medication helps her mental health symptoms is not specific, clear, and convincing, nor is it supported by substantial evidence.

For the above stated reasons, the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony. Accordingly, the ALJ erred.

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

1  Plaintiff testified to greater limitations than the limitations included in the residual

2  functional capacity determination ("RFC"). For example, Plaintiff testified that she stays in bed

3  most of the time with "low motivation, feeling stuck in life" due to her depression, and that she

4  doesn't leave her home for two to two and a half weeks per month because of her mental health

5  issues. AR 1016, 56-57. In contrast, in the RFC, the ALJ did not include any absenteeism

6  limitations. AR 21-22. Therefore, if Plaintiff's testimony regarding her symptoms was given great

7  weight and additional limitations were included in the RFC and in the hypothetical questions posed

8  to the vocational expert ("VE"), the ultimate disability determination may have changed.

9  Accordingly, the ALJ's errors are not harmless and require reversal.

10  **II.     Whether the ALJ properly considered the medical opinion evidence.**

11  Plaintiff asserts the ALJ erred in assessing the opinions of Drs. Cunningham and Yun. Dkt.

12  13, pp. 13-18.

13  In assessing an acceptable medical source, an ALJ must provide "clear and convincing"

14  reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester*,

15  81 F.3d at 830 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849

16  F.2d 418, 422 (9th Cir. 1988). When a treating or examining physician's opinion is contradicted,

17  the opinion can be rejected "for specific and legitimate reasons that are supported by substantial

18  evidence in the record." *Lester*, 81 F.3d at 830-831 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043

19  (9th Cir. 1995)); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The ALJ can accomplish

20  this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

21  stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citing

22  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

23

24

1    A.   Dr. Cunningham

2        Dr. Cunningham, an examining psychologist for the Washington State Department of

3    Social and Health Services ("DSHS"), conducted a psychological evaluation of Plaintiff in July

4    2015. AR 353-362. After conducting a clinical interview and two MSEs, Dr. Cunningham opined

5    to several moderate and severe limitations in Plaintiff's ability to conduct basic work activities. AR

6    353-360. For example, Dr. Cunningham opined Plaintiff was severely limited in understanding,

7    remembering, and persisting in tasks by following detailed instructions. AR 357. She also opined

8    Plaintiff is severely limited in communicating and performing effectively in a work setting,

9    maintaining appropriate behavior in a work setting, and completing a normal work day and work

10   week without interruptions from psychologically based symptoms. AR 357. Dr. Cunningham

11   diagnosed Plaintiff with PTSD, depression, generalized anxiety disorder, panic disorder with

12   agoraphobia, and borderline personality disorder. AR 356.

13       The ALJ discussed Dr. Cunningham's opinion and gave it little weight, saying:

14   (1) Dr. Cunningham reviewed no records, indicating her entire opinion was based on
     this one time encounter with the claimant. (2) The claimant's statements to Dr.

15   Cunningham were inconsistent with other statements in the record. For example, the
     claimant told Dr. Cunningham panic attacks were triggered by doing math. This is

16   inconsistent with the claimant's report she had no difficulties handling her finances,
     including paying bills, counting change, handling a savings account, and using a

17   checkbook. I also note Dr. Cunningham specifically relied on the claimant's
     subjective statements, which are inconsistent with the medical evidence of record as

18   stated above, in assessing the severity of the claimant's mental health symptoms. For
     example, Dr. Cunningham described symptoms of depression and anxiety as being

19   present "much of the time," including panic disorder symptoms in public. As this was
     a one-time evaluation with no review of records, conducted in private, Dr.

20   Cunningham relied specifically on the claimant's statements in suggesting severe
     symptoms of depression, anxiety, and posttraumatic stress disorder.

21

22   (3) There is substantial evidence the claimant inconsistently reported her conditions
     to Dr. Cunningham, describing far greater severity than was established by her

23   treating providers. For example, the claimant told Dr. Cunningham she had perianal
     fistulas that continued to leak after two surgeries. This is inconsistent with the

24   findings of Dr. Sinnett, a treating surgical specialist, the [sic] claimant had "no

evidence of recurrent fistula." The claimant also inconsistently reported her psychiatric symptoms. For example, the claimant told Dr. Cunningham she experienced visual hallucinations. This is inconsistent with the claimant's psychiatric evaluation two months earlier in which there was no indication she was experiencing psychotic symptoms.

Moreover, the claimant told Dr. Cunningham she last worked in 2009, and that she had been sick a lot. However, two months before the claimant told an examining psychiatric provider she had never been fired from a job and that she simply quit after having conflicts with others – without any mention of being sick a lot while working.

(4) Dr. Cunningham's opinion is also inconsistent with the claimant's statements to treating providers, the minimal observations of psychiatric symptoms, the claimant's performance on mental status examinations across the relevant period, and the claimant's activities as discussed above. For example, the claimant suggested to Dr. Cunningham she had severe symptoms of posttraumatic stress disorder (PTSD) much of the time, including fear, paranoia, sleep disturbance, and vigilance. However, when meeting with Andrew Kokesh, ARNP, the claimant specifically denied any re-experiencing, [sic] ruminations, and nightmares.

AR 28-29 (citations omitted) (numbering added).

First, the ALJ discounted Dr. Cunningham's opinion because it was based on a "one time encounter" with Plaintiff. AR 28. An examining doctor, by definition, does not have a treating relationship with a claimant and usually only examines the claimant one time. *See* 20 C.F.R. § 404.1527. "When considering an examining physician's opinion … it is the quality, not the quantity of the examination that is important. Discrediting an opinion because the examining doctor only saw claimant one time would effectively discredit most, if not all, examining doctor opinions." *Yeakey v. Colvin*, 2014 WL 3767410 at *6 (W.D. Wash. July 31, 2014). Therefore, the ALJ improperly rejected Dr. Cunningham's opinion because it was based on a one-time examination. Thus, the ALJ's first reason for rejecting Dr. Cunningham's opinion is not specific and legitimate and supported by substantial evidence.

Second, the ALJ discounted Dr. Cunningham's opinion because it "specifically relied on [Plaintiff's] subjective statements, which are inconsistent with the medical evidence of record" and

because Dr. Cunningham "specifically relied on [Plaintiff's] subjective statements…" AR 28. An ALJ may reject a physician's opinion if it is largely based on "a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation omitted). This situation is distinguishable from one in which the doctor provides her own observations in support of her assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200). Here, there is no indication Dr. Cunningham relied more heavily on Plaintiff's testimony than on her clinical observations. She reviewed Plaintiff's history, conducted a clinical interview, made diagnoses, and conducted two MSEs. AR 353-362. Accordingly, the ALJ's second reason for discounting Dr. Cunningham's opinion is not specific and legitimate and supported substantial evidence.

Third, the ALJ discounted Dr. Cunningham's opinion because "[t]here is substantial evidence [Plaintiff] inconsistently reported her conditions … describing far greater severity than was established by her treating providers." As discussed in the Court's analysis of the ALJ's second reason for discounting Dr. Cunningham's opinion, there is no indication Dr. Cunningham relied more heavily on Plaintiff's testimony than on her clinical observations. She reviewed Plaintiff's history, conducted a clinical interview, made diagnoses, and conducted two MSEs. AR 353-362. Accordingly, this finding by the ALJ is not based on substantial evidence in the record as a whole and is not specific and legitimate.

The ALJ's fourth reason for discounting Dr. Cunningham's opinion is conclusory. *See* AR 29. The ALJ failed to explain how any of Dr. Cunningham's observations are inconsistent with

1    Plaintiff's statements to treating providers, the alleged minimal observations of psychiatric

2    providers, Plaintiff's performance on MSEs across the relevant period, or Plaintiff's activities. *See*

3    *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate

4    and logical bridge from the evidence to her conclusions so that we may afford the claimant

5    meaningful review of the SSA's ultimate findings"). The ALJ states Dr. Cunningham's opinion is

6    inconsistent with the record and provides no further reasoning. This is conclusory. *See Reddick*,

7    157 F.3d 715 at 722-723. Without an adequate explanation to support the alleged inconsistency,

8    the Court cannot determine if the alleged inconsistency is a valid reason to discredit Dr.

9    Cunningham's opinion. *See Blakes*, 331 F.3d at 569. Further, the Court has found that the ALJ

10   failed to show that the record: (1) contained minimal observations of psychiatric symptoms; (2)

11   demonstrated how Plaintiff's performance on MSEs across the relevant period shows minimal

12   psychiatric symptoms; and (3) demonstrated Plaintiff's activities indicate lesser psychiatric

13   symptoms. *See* Section I, *supra*. Accordingly, the ALJ's fourth reason for discounting Dr.

14   Cunningham's opinion is not specific and legitimate and supported by the record.

15       For the above stated reasons, the ALJ failed to provide specific and legitimate reasons

16   supported by the record for discounting Dr. Cunningham's opinion. Accordingly, the ALJ erred

17   and is directed to reassess Dr. Cunningham's opinion on remand.

18       B.  <u>Dr. Yun</u>

19       Dr. Yun completed a DSHS psychological evaluation of Plaintiff in June 2017. AR 867-

20   872. Dr. Yun reviewed Dr. Cunningham's opinion and conducted a clinical interview and an MSE

21   of Plaintiff. AR 867-872. Dr. Yun opined Plaintiff's memory, concentration, and insight and

22   judgment were not within normal limits. AR 871-872. Dr. Yun also opined Plaintiff's thought

23   process and content, orientation, perception, fund of knowledge, and abstract thought were all

24

within normal limits. AR 871-872. She observed Plaintiff's affect as "anxious and dysphoric." AR 871. Dr. Yun opined to several marked to severe limitations, including severe limitations in communicating and performing effectively in a work setting and maintaining appropriate behavior in a work setting. AR 870. Dr. Yun also opined Plaintiff was severely limited in completing a normal work day and work week without interruptions from psychologically based symptoms. AR 870.

The ALJ discussed Dr. Yun's opinion and dismissed it, saying:

Dr. Yun did not review any of the claimant's treatment records, and only cited the evaluation of Dr. Cunningham discussed above as a source of information outside of the claimant's subjective statements and inventories. (1) This evidence indicates Dr. Yun relied heavily on the claimant's subjective statements which include her responses on the Beck Depression Inventory and Beck Anxiety Inventory.

….

[These] tools are self-administered and are based upon the perception of the individual, and do not demonstrate objective clinical findings. The claimant's responses on these inventories, and therefore the assessed severity of these tools, are inconsistent with the claimant's medical evidence of record, including the observations of minimal psychiatric symptoms and the claimant's performance on mental status examination [sic]. For example, the claimant's responses on the depression inventory suggest she is sad all the time and cries over every little thing. These responses are inconsistent with the generally normal psychiatric observations of her primary care providers.

The fact that Dr. Yun specifically cites the claimant's scores on these inventories, in conjunction with the claimant's responses on the Personality Assessment Inventory (PAI), significantly erodes the reliability of her evaluation and her suggested limitations.

(2) The suggested marked and severe limitations are also inconsistent with the minimal observations of psychiatric symptoms, the claimant's performance on mental status examinations across the relevant period, and the claimant's activities as discussed above. For example, The [sic] indications the claimant is unable to communicate or perform effectively or maintain appropriate behavior in a work setting, [sic] are inconsistent with the documentation of normal psychiatric observations of the claimant's treating providers. In addition, during this evaluation the claimant again described symptoms of PTSD, which is inconsistent with her treatment records, such as denying any related symptoms to ARNP Kokesh.

1

2
     (3) There is also evidence the claimant described more significant psychiatric symptoms to Dr. Yun than she described to her treating providers during this same time period. For example, the claimant told Dr. Yun she was experiencing suicidal ideation and self-harm behaviors. On the Beck Depression Inventory, the claimant indicated she would like to kill herself. However, these responses are inconsistent with the treatment records. One week before this evaluation the claimant told her treating mental health provider that while she had low motivation and felt stuck in her life style, she was not suicidal.

3

4

5

6
AR 29-30 (citations omitted) (numbering added).

7
     First, the ALJ dismissed Dr. Yun's opinion because she relied heavily on Plaintiff's

8
subjective statements, saying that Dr. Yun did not review any of Plaintiff's treatment records. AR

9
29-30. There is no indication that Dr. Yun relied more heavily on Plaintiff's statements than on her

10
own observations. Dr. Yun conducted a clinical interview and an MSE of Plaintiff, in addition to

11
noting Plaintiff's subjective complaints. *See* AR 867-872. MSEs are "objective measures" which

12
"cannot be discounted as a self-report." *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

13
Thus, this was not a legitimate reason for discounting Dr. Yun's opinion. Further, the Ninth Circuit

14
noted in *Buck* that "[p]sychiatric evaluations may appear subjective, especially compared to

15
evaluation in other medical fields." *Id*. "Diagnoses will always depend in part on the patient's self-

16
report, as well as on the clinician's observations of the patient." *Id*. Because this "is the nature of

17
psychiatry … the rule allowing an ALJ to reject opinions based on self-reports does not apply in

18
the same manner to opinions regarding mental illness." *Id*. (citations omitted). Additionally, there

19
is no indication Plaintiff was not candid with Dr. Yun and in filling out the Beck inventories, nor is

20
there evidence Dr. Yun found Plaintiff not credible. *See* AR 871 (Dr. Yun opining that "[t]here was

21
no evidence of malingering or factitious behavior"). Thus, the ALJ's first reason for discounting

22
Dr. Yun's opinion is not specific and legitimate and supported by the record.

23

24

Second, the ALJ discounted Dr. Yun's opinion because it is inconsistent with the minimal observations of psychiatric symptoms, Plaintiff's performance on MSEs across the relevant period, and Plaintiff's activities. As discussed above, the Court has found that the ALJ failed to show that the record: (1) contained minimal observations of psychiatric symptoms; (2) demonstrated how Plaintiff's performance on MSEs across the relevant period shows minimal psychiatric symptoms; and (3) demonstrated Plaintiff's activities indicate lesser psychiatric symptoms. *See* Section I, *supra*. Further, because the ALJ does not support his conclusions with legitimate evidence in the record, the ALJ's reasoning is conclusory. *See Reddick*, 157 F.3d 715 at 722-723. Without an adequate explanation to support the alleged inconsistency, the Court cannot determine if the alleged inconsistency is a valid reason to discredit Dr. Yun's opinion. *See Blakes*, 331 F.3d at 569. Thus, the ALJ's second reason for discounting Dr. Yun's opinion is not specific and legitimate and supported by the record.

The ALJ's third reason that Plaintiff was inconsistent in reporting psychiatric symptoms to medical providers parallels his first reason for discounting Dr. Yun's opinion, and suffers similar flaws. Again, Dr. Yun opined "[t]here was no evidence of malingering or factitious behavior" during her consultation with Plaintiff. AR 871. Further, symptoms of mental health issues may vary, and "at times there may be periods where a disabled person has fewer problems; this does not mean that the person's disability has disappeared or that employment would be manageable." *Robert B. v. Berryhill*, 2018 WL 5023727 at *10 (W.D. Wash. Oct. 17, 2018); *see also Holohan*, 246 F.3d at 1205, 1207-1208 (a person who suffers from anxiety and depression may have some improvement, but the waxing and waning of symptoms must be considered in the context of the entire record). Thus, the fact that Plaintiff reported not being suicidal to one mental health provider and then reported she would "like to kill herself" to Dr. Yun a week later is not a valid reason to

1   discount Dr. Yun's opinion. Accordingly, the ALJ's third reason for discounting Dr. Yun's opinion

2   is not specific and legitimate and supported by the record.

3        For the above stated reasons, the ALJ failed to provide specific and legitimate reasons

4   supported by the record for discounting Dr. Yun's opinion. Accordingly, the ALJ erred and is

5   directed to reassess Dr. Yun's opinion on remand.

6        **III.    Whether the RFC assessment is supported by substantial evidence.**

7        Plaintiff contends the ALJ failed to properly assess her PTSD at Step Two of the sequential

8   evaluation process. Dkt. 13, pp. 2-5.

9        The Court has determined the ALJ harmfully erred in his assessment of Plaintiff's

10   testimony and of the medical opinion evidence. *See* Sections I and II., *supra*. Because Plaintiff will

11   be able to present new evidence and testimony on remand, and because the ALJ's reconsideration

12   of Plaintiff's testimony and the medical opinion evidence may impact his assessment of Plaintiff's

13   impairments, the ALJ shall reconsider Plaintiff's PTSD at Step Two.

14        **IV.    Whether this cased should be remanded for an award of benefits.**

15        Plaintiff argues this matter should be remanded with a direction to award benefits. *See* Dkt.

16   13, p. 18. The Court may remand a case "either for additional evidence and findings or to award

17   benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the

18   proper course, except in rare circumstances, is to remand to the agency for additional investigation

19   or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

20   However, the Ninth Circuit created a "test for determining when evidence should be credited and

21   an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

22   Specifically, benefits should be awarded where:

23              (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the

24              claimant's] evidence, (2) there are no outstanding issues that must be resolved

1   before a determination of disability can be made, and (3) it is clear from the record
2   that the ALJ would be required to find the claimant disabled were such evidence
    credited.

3   *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

4   The Court has determined, on remand, the ALJ must reevaluate Plaintiff's testimony regarding her

5   mental health symptoms and the opinions of Drs. Cunningham and Yun. Therefore, there are

6   outstanding issues which must be resolved and remand for further administrative proceedings is

7   appropriate.

8                                    <u>CONCLUSION</u>

9          Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded

10  Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this

11  matter is remanded for further administrative proceedings in accordance with the findings

12  contained herein.

13         Dated this 20th day of April, 2020.

14

15

16                                              David W. Christel
                                                United States Magistrate Judge

17

18

19

20

21

22

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY
BENEFITS - 22